UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CATHLEEN M. WOLTERSDORF, et al., )<br>)<br>      *Plaintiffs* )<br>)<br>v. )<br>)<br>RUSSELL L. DESROCHERS, et al., )<br>)<br>      *Defendants* ) | Docket No. 05-107-P-S |

*MEMORANDUM DECISION ON DEFENDANTS' MOTION TO EXCLUDE*

The defendants, Russell L. Desrochers and his employer, Phillips Express, Inc., move to exclude from trial certain evidence concerning the claim of Cathleen M. Woltersdorf for loss of income and loss of earning capacity. Defendants' Motion to Exclude Plaintiffs' Additional Claims, etc. ("Motion") (Docket No.15) at 5-8. In the alternative, they request a continuance of the trial in this case, which is now on Judge Singal's March 6, 2006 list. I grant the motion to exclude in substantial part.[1]

The complaint in this action, which is dated May 16, 2005, was filed in the Maine Superior Court (York County) and removed to this court by the defendant on June 8, 2005. Docket No. 1. A scheduling order issued on June 27, 2005 setting a discovery deadline of November 28, 2005. Docket No. 4. The case arises out of a traffic accident on June 2, 1999. Complaint ¶¶ 5, 8. In her initial disclosure to the defendants, the plaintiffs stated, under the heading "Loss of Income of Cathleen

---

[1] Because the issues raised by the motion are not case-dispositive, I am not issuing a recommended decision. Should either side wish to appeal from this memorandum decision to the trial judge pursuant to 28 U.S.C. § 636(b)(1)(A), counsel are advised that any objections shall be filed by February 22, 2006 and any responses thereto shall be filed by February 27, 2006. Consistent with Local
(*continued on next page*)

1

Woltersdorf" that "[t]o date, we have calculated $9955.00 in lost wages for Cathleen." Exhibit A to Motion, p. 7. The plaintiffs served answers to the defendants' interrogatories dated August 18, 2005. Exh. C to Motion. In response to the interrogatory "Please itemize in complete detail each element of damage claimed in this action," the plaintiffs wrote "See 'Computation of Damages' section of Plaintiffs' Initial Disclosure." *Id*. Interrogatory 19. In response to the interrogatory "If you are claiming a loss of income or earning capacity, please provide an itemization of the claim and describe all documents upon which you[] rely in computing this claim," the plaintiffs wrote "Please refer to itemizations provided in Plaintiffs' Initial Disclosure, dated August 1, 2005, marked as Exhibit C3 and Exhibit C.4." *Id*. Interrogatory 20. The claim itemized in Exhibit C.4 has been dropped. Motion at 2. Exhibit C.3 demonstrates the manner in which the figure of $9,955.00 in lost wages for Cathleen Woltersdorf was calculated. Exh. B to Motion.

On November 8, 2005 one of the plaintiffs' current attorneys e-mailed the attorney who has represented the defendants throughout, saying, in part:

> At this point, you should know (as you may already) that part of Cathleen's claim is that her injuries/medical condition prevent her from working more than her current schedule, which is approximately 20 hours per week. Although we will be amending Cathleen's initial disclosures, interrogatory responses etc. if and where appropriate, including as to wage claims, I wanted to pass this information along before the IME in the event you wanted to discuss it with your expert before Cathleen's evaluation.

Exh. D to Motion. This e-mail was sent at 9:07 p.m. *Id*. The IME was scheduled for the next day at 1 p.m. in Derry, New Hampshire. *Id*. In a letter dated November 9, 2005 the attorney for the defendants responded to this e-mail, stating that he had not had a chance to discuss the substance of the e-mail with the examining physician before the IME took place and that he would not agree to any addition of

---

Rule 72.1, no reply memoranda may be filed.

expert witnesses or damages claims by the plaintiffs. Letter Dated November 9, 2005 from Richard W. Mulhern to Nicole Lorenzatti, Exh. E to Motion.

On November 18, 2005 the plaintiffs' initial attorney filed a motion for leave to withdraw and the plaintiffs' current attorneys entered their appearance. Docket Nos. 7-9. After a telephone conference with the attorneys, I granted the motion to withdraw and determined that no action was necessary on a motion to extend the discovery deadline that had been filed by the plaintiffs' new attorneys. Docket No. 12. By letter dated December 27, 2005 counsel for the plaintiffs informed counsel for the defendants "of our intention to amend Cathleen Woltersdorf's interrogatory answers" and specifically stated that "[w]e also contend that Cathleen has suffered lost earning capacity based on the significant nature of her injury and her work-related skills and expertise. We believe that Cathleen will continue to lose about one-half of her earning capacity . . . throughout the course of her work life expectancy." Letter dated December 27, 2005 from Terrence D. Garmey to Richard W. Mulhern, Exh. F to Motion, at 1-2. Counsel for the defendants responded two days later stating that he would object to any attempt to expand the lost wage claim beyond that made in the initial disclosure and interrogatory answers. Letter dated December 29, 2005 from Richard W. Mulhern to Terrence D. Garmey, Exh. G to Motion, at 1.

On January 3, 2006 this court notified the parties that the case had been placed on a March 6, 2006 trial list. Docket No. 14. On January 24, 2006, Motion at 4, the plaintiffs served on the defendants a document designated as "supplemental responses" to the defendants' interrogatories, in which the "supplemental response" to Interrogatory 19 incorporates the "supplemental response" to Interrogatory 20, which itself extends over six pages and claims "lost earning capacity from 1999 to 2005" in the amount of $196,725.00, "minimum future lost earning capacity" in the amount of $602,880 and "maximum future lost earning capacity" in the amount of $1,152,000. [Untitled],

3

Interrogatory No. 20 Supplemental Response at [3]-[9], Exh. H to Motion. The supplemental responses were accompanied by additional business records and a 103-page "pain diary" which had not be provided previously and which the defendants assert were "within the scope of discovery requests served on the Plaintiff at the outset of the case." Motion at 4. The defendants also assert that the plaintiffs have been represented by counsel "since shortly after the accident (a Notice of Claim was filed in July 2000)." *Id*. at 6. The defendants ask the court to "limit the Plaintiff to the lost earnings claims made in her Initial Disclosure." *Id*. 7. There is no further mention of the documentary evidence in the parties' submissions and I therefore will not consider it.

The plaintiffs respond to the motion to exclude by stating that "Mrs. Woltersdorf's lost earning capacity claim was pled in the Complaint, detailed in her initial disclosures, and pursued throughout the course of this action." Plaintiffs' Objection to Defendants' Motion to Exclude, etc. ("Opposition") (Docket No. 21) at 1. They assert that

> Mrs. Woltersdorf's supplemental disclosure concerning her lost earning capacity claim solely provided computations of her claim for purposes of appropriately valuing this case, and such calculations were based on facts and theories previously produced, disclosed and/or made available to the Defendants.

*Id*. at 1-2. Essentially, the defendants contend that they provided the defendants "with the underlying information to calculate and value her lost earnings capacity claim in her initial disclosures," and thereafter needed to do no more. *Id*. at 3-5.[2] They also assert that the defendants' medical expert "knew at the time of Mrs. Woltersdorf's first . . . IME that she is limited to working half time." *Id*. at 1.

---

[2] The only Maine case law cited by the plaintiffs in their opposition — and cited repeatedly, Motion at 3, 3 n.1, 5, 8, 9 (twice) — says nothing about the appropriate time or substance of damages discovery; they merely discuss what kind of evidence may be used to prove the kinds of damages that the plaintiffs now seek. They are of no help in resolving the issue raised by the motion to exclude. The only other case cited by the plaintiffs, *Johnson v. H.G. Webster, Inc.*, 775 F.2d 1( 1st Cir. 1985), is helpful only to the extent discussed *infra*.

4

The authority that the plaintiffs cite for the latter proposition, page 5 of the report of the physician who performed the independent medical examination, *id*. at 7, does not support the assertion. The report states only that "[Cathleen Woltersdorf] feels that she is working five days a week on a part-time basis." IME, report dated November 9, 2005, from Jonathan W. Sobel, M.D., to Attorney Richard W. Mulhern (Exh. D to Opposition), at 5. This statement by Cathleen Woltersdorf does not demonstrate that Dr. Sobel "knew" that she "is limited to working half time." In addition, the statement was ultimately of little interest to Dr. Sobel, who concluded that Cathleen Woltersdorf "achieved a maximum medical improvement within months of the motor vehicle accident and that due to other factors . . . continued to seek and/or require further treatments." *Id*. at 9. Thus, Cathleen Woltersdorf's claimed ability to work at the time of the independent medical examination was not relevant to Dr. Sobol's conclusions about the medical effects of the accident on her. Even if that were not the case, a statement to an independent medical examiner nineteen days before the close of discovery cannot be considered the equivalent of a response to a specific interrogatory served over three months earlier asking for that very information.

The plaintiffs' primary argument, that evidence to support Cathleen Woltersdorf's current claim for damages was available to the defendants all along if only they had studied the information the plaintiffs had given them, would allow every personal injury plaintiff to provide defendants with reams of documentary material and a deliberately low total damages claim which could then be multiplied with relative impunity at trial. If all of the supporting information had been supplied to the defendants early on, then it was equally available to the plaintiffs. And yet the fact is that the plaintiffs supplied, in response to a specific request, a total amount of lost wages less than 10 per cent of what they now claim, on the eve of trial.

As the Maine Law Court noted in one of the cases cited by the plaintiffs, "[d]amages relating to lost earnings have traditionally fallen into two categories, lost wages or earnings and lost earning capacity." *Snow v. Villacci,* 754 A.2d 360, 363 (Me. 2000). The defendants' interrogatories asked, "Please itemize in complete detail each element of damage claimed in this action," and "If you are claiming a loss of income or earning capacity, please provide an itemization of the claim and describe all documents upon which you[] rely in computing this claim." Exh. C to Motion, Interrogatories 19 and 20. The plaintiffs' response set out only hours of work that Cathleen Woltersdorf claimed to have missed due to the injury and the rate the plaintiffs' business would have charged for those hours. Exh. B to Motion (identified in the caption as "Exhibit C.3 Loss of Income Summary for Cathleen Woltersdorf"). There is no way in which this itemization could reasonably have been interpreted to state a claim for lost earning capacity. The plaintiffs' initial disclosure stated:

> We are making a claim for this loss [set out in Exhibit C.3] as well as times missed for medical appointments during her working season . . . . We're making a claim for this loss and have itemized sheet [sic] detailing hours missed, even though it's apparent she suffered a much larger loss.
>
> \* \* \*
>
>    Cathleen is presently limited in the hours she works and the manner of her work. She is hopeful to regain close to full capacity, but will never be able to use wheelbarrow [sic] again.
>
>    With respect to her hourly rate, neither her nominal salary nor the company's billing rate for her time is an accurate measure of her loss. She pays her help $15/hour for much of the work she does, but they lack her experience, artistry and supervisory skills. She could easily work for a competitor for at least $20/hr, who would bill her out at a much higher rate, and we have used that rate as conservative estimate [sic] of her hourly wage loss, based on an 8 hour day during the working season.
>
>    To date, we have calculated $9955.00 in lost wages for Cathleen.

Exh. A to Motion at 6-7. Contrary to the plaintiffs' suggestion, neither the fact that this disclosure states that the estimate of her hourly wage loss was based on a "conservative" rate, Opposition at 3, nor the use of the phrase "to date," *id*. at 4 n.2, served adequately to alert the defendants to the fact that

6

the plaintiffs intended to make a much greater claim for lost wages and a separate claim for lost earning capacity at trial. At most, taken together, the use of these two phrases suggests that the plaintiffs intended to update the claim on the same basis at the time of trial, when they would know how many more hours of work, if any, Cathleen Woltersdorf claims to have lost due to the accident. Indeed, the use of the phrase "presently limited" and the statement that Cathleen Woltersdorf "is hopeful to regain close to full capacity" are more suggestive of the absence of a claim for lost earning capacity than any other possible inference.

Similarly, the identification of Linda Ferguson as an expert witness does not serve to inform the defendants that a significant claim for lost earning capacity will be made at trial, contrary to the plaintiffs' current argument, *id*. at 5. As quoted above, the initial disclosure demonstrated that Ms. Ferguson's testimony would be used to support the hourly rate chosen by the plaintiffs as the basis for their claim for lost wages.

The First Circuit directs that the duty to supplement discovery responses under Fed. R. Civ. P. 26(e) is to be construed "in light of its dual purposes, narrowing of issues and elimination of surprise." *Johnson*, 775 F.2d at 7. In this case, the plaintiffs' timing of the supplementation of their interrogatory responses with respect to damages guaranteed rather than eliminated surprise and has obviously broadened the issues in dispute.

> [T]he emphasis in evaluating the decision to admit testimony over a Rule 26(e) objection entails careful balancing. Trial . . . courts should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the defendant to formulate a response. It is noteworthy that, in those cases in which testimony was held properly excluded, the courts have found some evasion or concealment, intentional or not, on the part of the litigant offering the evidence.

*Id*. at 8 (citation omitted). Here, the new damages claims are obviously important to the plaintiffs but the defendants' ability to respond to the vastly increased numbers this close to the start of trial is just

7

as obviously very limited. As I noted above, if in fact all of the documentation necessary to generate the numbers now presented by the plaintiffs was provided to the defendants long ago, the inference that some evasion or concealment was taking place is not an unreasonable one to draw.

In *Thibeault v. Square D. Co.*, 960 F.2d 239 (1st Cir. 1992), the trial court granted the defendant's motion to exclude expert testimony after the plaintiff served a supplemental interrogatory answer four days before trial naming seven experts not previously disclosed. *Id*. at 241, 242. Citing *Johnson*, the First Circuit stated: "To this we might add that the reason for the proponent's failure to update his discovery seasonably, as Rule 16(e)(1) requires, should also be carefully examined." *Id*. at 244. Here, the plaintiffs offer no reason at all, attempting to place the burden on the defendants to show why they should not be allowed to pursue their new damages claims.

This court, in *Net 2 Press, Inc. v. 58 Dix Avenue Corp*., 266 F.Supp.2d 146, 159-60 (D. Me. 2003), dealt with a challenge to certain portions of an affidavit submitted in opposition to a motion for summary judgment on the ground of an asserted discovery violation. The challenged portions dealt with damages sought on claims for slander of title and misrepresentation; no such damages were claimed in the opposing party's earlier answers to interrogatories or expert disclosures. The disclosure merely stated that the experts "will be calculating . . . damages caused by the slander of title." *Id*. at 160. The interrogatory requested "extensive detail about each item of damage claimed for each count," but the "response cannot be read to include the information presented" in opposition to the motion for summary judgment. *Id*. The discovery deadline was September 23, 2002; the affidavit presenting the amount of damages was filed on October 23, 2002. *Id*. The court said:

> While supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of dispositive motions and on the eve of trial in the absence of extraordinary circumstances, which are clearly not present here.

*Id*. at 161. As is the case here, the plaintiffs in *Net 2 Press* argued that the claim for the damages at issue was included in the materials that had been provided in discovery, if only the defendants had looked. *Id*. A party is not required to examine the discovery provided by an opponent in order to discern every possible claim for damages that might conceivably be made when that party has already asked the opponent to specify every element of the quantifiable damages claimed. The party posing the interrogatory is entitled to rely on the answer given by the opponent. *See Depew v. ShopKo Stores, Inc*., 2006 WL 47357 (D. Idaho Jan. 6, 2006), at *3:

> The prejudice resulting from an eve-of-trial supplemental disclosure (after the close of discovery) is the same as if no disclosure whatsoever was made prior to trial. In both circumstances, the opposing party is put to the Hobson's choice of either flying blind on cross-examination or asking for a delay to conduct discovery. This is why the Advisory Committee Notes to Rule 26 state[] that the supplementation must be made 'at appropriate intervals *during the discovery period* . . . .″ (emphasis added.) In this case, the supplemental disclosure was filed 7 months after discovery had closed and just 2 months prior to trial. The Court finds that the persons identified in this disclosure are subject to exclusion under Rule 37(c)(1) unless ShopKo can show either substantial justification or harmlessness.

Here, the plaintiffs have shown neither.

## Conclusion

For the foregoing reasons, the defendants' motion to exclude is **GRANTED** as follows**.** The claim of plaintiff Cathleen Woltersdorf for damages for lost earnings or lost earning capacity shall initially be limited to $9,955.00; whether an additional amount equal to the number of hours of work she has allegedly missed after May 31, 2005 due to injuries arising from the June 1999 accident multiplied by the hourly rate of $20 (or some other specific hourly rate) may also be sought will be addressed during trial by the trial judge, should the issue arise.

Dated this 14th day of February 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge